Richard F. Carroll and Patricia A. Carroll v. Commissioner.
Carroll v. Commissioner
Docket No. 785-68.
United States Tax Court
T.C. Memo 1969-95; 1969 Tax Ct. Memo LEXIS 201; 28 T.C.M. (CCH) 532; T.C.M. (RIA) 69095; May 14, 1969, Filed *201 Richard F. Carroll, pro se, Box 58, Arkville, N. Y. Robert M. Pearl, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1965 in the amount of $94.23 based upon determined small amounts of additional income from interest and a New York State tax refund and upon disallowed deductions of a part of the amounts claimed for work clothes, uniforms and their upkeep and all of the amounts claimed as medical expense deductions for Richard F. Carroll's mother. Petitioners at trial conceded that all of respondent's determinations were correct save only the claimed medical expense deductions for the husband petitioner's mother. Petitioners, Richard F. Carroll and Patricia A. Carroll, are husband and wife who resided at Arkville, New York, at the time the petition herein was filed. They had filed their joint income tax return for the year 1965 with the district director of internal revenue, Brooklyn, New York. Richard F. Carroll's mother was not claimed as a dependent on said return but medical expenses which petitioner Richard had paid for her in 1965 in the total amount of $410 were *202 claimed as a part of petitioners' itemized deductions; the said $410 was disallowed by respondent on his determination that Richard's mother did not qualify as petitioners' dependent under section 152 of the Internal Revenue Code[1] for the year 1965 and such disallowance is now the sole issue in dispute before us. Richard F. Carroll will hereinafter be referred to as petitioner. Commencing in about 1947 petitioner began supporting his mother entirely. She moved into petitioner's home in about 1960 and there suffered a stroke in about 1962. She continued, however, to live in the home with petitioner, his wife and their seven children until about 1963, at which time petitioner's wife could no longer do all of the work so petitioner put his mother in a nursing home where she was still living at the time of trial. Petitioner continued paying for all of his mother's support without claiming or receiving any relief or welfare payments for her or on her behalf until January 19, 1965, at which time he could no longer stand this financial drain. Welfare payments were then applied for and have supported his mother since that time. Petitioner *203 did not claim his mother as a dependent in 1965 but he did claim as a part of his medical deductions the payments which he made to the nursing home and for her hearing aid repairs and batteries during the month of January 1965. These payments consisted of reimbursements to the welfare agency, a payment to a medical doctor, the hearing aid payments aforesaid, and direct payments to the nursing home and for laundry. At the trial respondent conceded that these charges were all legitimate, were for medical services rendered to petitioner's mother, and were paid during the year 1965. At trial petitioner expressed his position as follows: I felt I was right in claiming it, although it was not I was trying to do anything wrong because I did not claim her as a dependent. I was not trying to pull any deals. That is about as far as I can go with it. It is just I felt I was right and I was entitled to that after all those years when I did support her. Petitioner testified that the following bills paid by him in 1965 were for services rendered to or for his mother in 1964 at which time respondent admits she was his dependent: [2] *204 533 Doctors' bills
$14.00
Laundry
[3] 25.00
Medicines
2.30
One-half of the hearing aid repairs and batteries
30.00 (a compromise amount agreed to by respond- ent at trial.)
Total
$71.30 It is provided by section 1.213-1(e)(3), Income Tax Regs., in part as follows: (3) Status as spouse or dependent. In the case of medical expenses for the care of a person who is the taxpayer's spouse or dependent, the deduction under section 213 is allowable if the status of such person as "spouse" or "dependent" of the taxpayer exists either at the time the medical services were rendered or at the time the expenses were paid. * * * Thus, payments made in June 1956 by A, for medical services rendered in 1955 to B, his wife, may be *205 deducted by A for 1956 even though, before the payments were made, B may have died or in 1956 secured a divorce. * * * Respondent agrees that this section of the Regulations is applicable to those payments which we have found were for medicall services rendered petitioner's mother in 1964 and totaling $71.30 and consequently such items will be allowed as a part of the itemized deductions. Respondent's determination as to the balance of the claimed medical deduction ($338.70) must be sustained under the clear language of section 213 which limits such deduction to amounts paid for the medical care "of the [taxpayer's] * * * dependents (as defined in Sec. 152) * * *." Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. Petitioner admits that his mother was not his "dependent" as defined by section 152↩ of the Code in 1965 since he did not furnish over half of her support in said year.
3. At the trial respondent agreed that this item (and all other items on the nursing home bill) were legitimate and were for medical services rendered to petitioner's mother. On brief respondent suggests that this laundry item might be personal rather than medical. This amounts to a change of position and we reject it, for otherwise petitioner would have been misled at the time of the trial.↩